IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATA NAHOURAII, | ) |
| Plaintiff, | ) Civil Action No. 2:11-cv-00973 |
| v. | ) Judge Mark R. Hornak |
| INDIANA UNIVERSITY OF PENNSYLVANIA and ROBERT CAMP, in his official and individual capacities, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

Before the Court is the Partial Motion to Dismiss the Amended Complaint (ECF No. 12) filed by Indiana University of Pennsylvania and Dr. Robert Camp ("University Defendants"). The University Defendants seek to dismiss Count VI (Breach of Contract), claiming that this Court lacks jurisdiction to adjudicate it. The Court has reviewed Plaintiff Ata Nahouraii's ("Dr. Nahouraii's") Amended Complaint (ECF No. 11) and the various briefs in support of and in opposition to the Partial Motion to Dismiss (ECF Nos. 13, 15, 17). For the reasons that follow, University Defendants' motion is denied.

## *I. Background*

Under Federal Rule of Civil Procedure 12(b)(1)[1], the burden of proving subject matter jurisdiction over a defendant falls on the plaintiff. *Urella v. Pa. State Troopers Assoc.*, 628 F.

---

[1] While University Defendants also cite to Federal Rule of Civil Procedure 12(b)(6), the only dispute at this stage in the proceedings is whether Pennsylvania law and/or the Eleventh Amendment divests this Court of subject matter jurisdiction over Nahouraii's breach of contract claim in Count VI of his Amended Complaint. Therefore, the parties' arguments are treated as solely within the purview of Rule 12(b)(1).

Supp. 2d 600, 604 (E.D. Pa. 2008). When reviewing the plaintiff's proffer, the Court accepts all factual allegations as true and construes all disputed facts in the plaintiff's favor. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Therefore, for the purposes of disposition of University Defendants' Partial Motion to Dismiss, the essential facts are as follows.

Dr. Nahouraii is a tenured professor[2] at Indiana University of Pennsylvania's ("IUP's") branch campus in Monroeville, Allegheny County, Pennsylvania. He is a naturalized United States citizen of Iranian heritage and is currently 71 years of age. Dr. Nahouraii brings multiple claims against both IUP and his supervisor, Defendant Robert Camp. Dr. Robert Camp ("Dean Camp") is the Dean of IUP's Business School, and this suit is brought against Dean Camp in his individual and official capacities.

Dr. Nahouraii's seemingly troubled relationship with his employer dates back to the Fall Semester of 2000, when University Defendants removed Dr. Nahouraii from teaching duties. Around this time, Dr. Nahouraii filed discrimination charges based on age, race, and retaliation, and brought an employment discrimination lawsuit against University Defendants in the United States District Court for the Western District of Pennsylvania on December 21st, 2001,[3] Civil Action Number 2:01-cv-02461-GLL. The parties' dispute culminated, after several years, in a settlement agreement executed in December 2006.[4] Dr. Nahouraii states[5] that the settlement

---

[2] Dr. Nahouraii received tenure in 1983 and became a "full professor" in 1992. Am. Compl. ¶ 9.

[3] While Dr. Nahouraii does not give the specific filing date of his earlier suit in his Amended Complaint, he provided this Court with its civil action number. A court may consider matters extraneous to a complaint if they are part of the public record or incorporated by reference into the complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Dr. Nahouraii incorporates his prior lawsuit into his Amended Complaint and that suit's docket is a matter of public record, this Court can properly take notice of the earlier suit.

[4] The final docket entry in the earlier action is an order closing the case and retaining jurisdiction (ECF No. 67, Civ. Action No. 01-2461).

[5] The parties have not disclosed the settlement agreement to this Court.

agreement provided that (1) he would retain full eligibility to teach graduate level (EMBA) courses and participate in IUP's overseas, academic program in India, (2) all records relating to his removal from teaching, including student complaints and various internal correspondence, would be purged from IUP's files, and (3) the parties would "deal with each other in the future in good faith as obligated under the CBA." Am. Compl. ¶¶ 15-17. He also received and embarked on a one-year leave of absence pursuant to the agreement's terms.

Dr. Nahouraii returned to IUP in 2007. He alleges that the "harassment, discrimination, and retaliation" resumed nearly immediately, with Dean Camp attempting to circumvent the settlement agreement through an inter-departmental reorganization in November 2007, which would limit Dr. Nahouraii's assigned classes in breach of the agreement. Am. Compl. ¶ 21. Dr. Nahouraii further asserts that the discrimination and retaliation continued in different forms for approximately seven years, necessitating the filing of this second employment lawsuit against University Defendants in this Court.

He proffers as examples of University Defendants' alleged discriminatory and retaliatory actions the following: denying him the opportunity to teach graduate-level classes, repeatedly rejecting his applications for research releases, and forcing him to teach more classes[6] than his colleagues during the school year. Dr. Nahouraii asserts that this refusal to assign him graduate-level courses constitutes a breach of the settlement agreement and that several other alleged discriminatory or retaliatory actions taken by University Defendants also run afoul of the

---

[6] Dr. Nahouraii asserts that many of these classes were "inappropriate," in that they were low-level undergraduate classes, or "less desirable," in that their existence was contingent upon a certain, minimum number of students choosing to take the course during a particular semester. See Am. Compl. ¶¶ 33, 66.

agreement's terms, such as failing to purge the agreed-upon records, denying him the opportunity to participate in the India program,[7] and refusing to deal with him in good faith.

Accordingly, Dr. Nahouraii brings employment discrimination and retaliation claims against University Defendants pursuant to Title VII and the Pennsylvania Human Relations Act. He also alleges that he was denied rights secured under the Equal Protection Clause of the Fourteenth Amendment, made actionable by 42 U.S.C. § 1983 (2006). Finally, in Count VI of his Amended Complaint, Dr. Nahouraii seeks to recover for breach of contract due to University Defendants alleged failure to abide by the settlement agreement's terms. He asserts within that Count facts which appear to also sound in retaliation under Title VII. *See* Am. Compl. ¶¶ 152-156. Count VI is the sole subject of University Defendants' partial motion to dismiss.

University Defendants argue that that the Pennsylvania Board of Claims has exclusive subject matter jurisdiction over Count VI, divesting this Court of the power to adjudicate this claim.[8] Dr. Nahouraii responds that this Court can and should exercise its supplemental jurisdiction over his contract claim, because his action for breach of the settlement agreement is grounded in the alleged employment discrimination and retaliation under Title VII, as well as in the litigation to vindicate his right to be free from such discrimination originally filed in this Court in 2001. *See* Nahouraii v. Ind. Univ. of Pa., No. 01-2461 (W.D. Pa. filed Dec. 21, 2001.) University Defendants, of course, contest this characterization of Dr. Nahouraii's claims in Count VI.

The matter having been fully briefed, this motion is ripe for disposition.

---

[7] Dr. Nahouraii claims that the denial of the opportunity to teach in the five-week India program forced him to suffer an economic loss of over $30,000. Am. Compl. ¶ 88.

[8] In their papers, University Defendants rely only on Pennsylvania statutory law in making their Partial Motion to Dismiss.

4

## II. Legal Standard

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court's exercise of such jurisdiction would be proper. *Urella*, 628 F. Supp. 2d at 604. A defendant may attack the complaint on its face by alleging that it "fails to allege subject matter jurisdiction or contains defects in the jurisdictional allegations," or he may make an "in fact" challenge by disputing the existence of plaintiff's alleged facts that support a jurisdictional predicate. *Id.* Here, University Defendants contend that a Pennsylvania statute divests this Court of jurisdiction over Dr. Nahouraii's breach of contract claim in Count VI of his Amended Complaint, regardless of the alleged facts underlying this claim. Therefore, University Defendants attack the Amended Complaint on its face.

When resolving a facial challenge, the district court accepts all factual allegations contained within the plaintiff's complaint as true and construes all disputed facts in the plaintiff's favor. *Fowler*, 578 F.3d at 210. If, under any reasonable reading of the complaint, the plaintiff cannot prove that the court possesses subject matter jurisdiction, the disputed claim must be dismissed. *See id.* (citing *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. Discussion

Resolution of the University Defendants' motion involves questions of both state and federal law.[9] In general, the Eleventh Amendment grants states and their agencies complete immunity from suits in federal court by their citizens or those of other states. U.S. CONST. amend. XI; *Urella*, 628 F. Supp. 2d at 604. States may waive Eleventh Amendment immunity and consent to the litigation of certain actions in federal court, and Congress may also abrogate

---

[9] While Defendants have not raised the Eleventh Amendment as a jurisdictional bar, given that the Court's subject matter jurisdiction has been placed at issue, it is appropriate to address its application here.

5

that immunity. *Id.* at 605. Pennsylvania, pursuant to 62 Pa. Con. Stat. Ann. § 1702(b) (2012), has waived its sovereign immunity with regard to contract claims against Pennsylvania agencies. However, Pennsylvania law also mandates that persons seeking to recover from an alleged breach of contract by a state agency adjudicate such claims before the Pennsylvania Board of Claims ("the Board"), rather than in court. 62 Pa. Con. Stat. Ann. § 1724(a) (2012). Subject to certain statutory limitations, "the board shall have exclusive jurisdiction to arbitrate claims arising from...a contract entered into by a Commonwealth agency...." § 1724(a)(1). Pennsylvania courts broadly construe this statute, holding that the Board (and the Board alone) has the power to entertain all claims arising from a breach of contract action against the state or its agencies, regardless of the requested relief. *Hanover Ins. Co. v. State Workers' Ins. Fund Com.*, 35 A.3d 849, 852 (Pa. Commw. Ct. 2012); *Porreco v. Maleno Developers, Inc.*, 717 A.2d 1089, 1091 (Pa. Commw. Ct. 1998) (citing *Xpress Truck Lines, Inc. v. Pennsylvania Liquor Control Board*, 469 A.2d 1000 (Pa. 1983) and *Ezy Parks v. Larson*, 454 A.2d 928 (Pa. 1982)). The Board's expansive and exclusive jurisdiction includes the power to adjudicate claims arising from settlement agreements. *See, e.g., Watrel v. Dep't of Educ.*, 518 A.2d 1158, 1159 (Pa. 1986) (breach of pre-litigation settlement agreement against the Pennsylvania Department of Education arbitrated before the Board). Federal courts are likewise precluded from exercising subject matter jurisdiction over a breach of contract claim against a Pennsylvania agency[10] in those circumstances where Pennsylvania law mandates that they be brought only before the Board. *Urella*, 628 F. Supp. 2d at 607; *see also Seeney v. Kavitski*, 866 F. Supp. 206, 210 (E.D. Pa.

---

[10] As Indiana State University is part of the State System of Higher Education, it is a Commonwealth agency within the meaning of the Board's jurisdictional statute. § 1724(a); 24 Pa. Stat. Ann. § 20-2002-A (West 2012); *See Tran v. State System of Higher Educ.*, 986 A.2d 179, 183-84 (Pa. Commw. Ct. 2009). The parties also do not contest IUP's status as a state entity.

1994) (holding claim for breach of employment contract fell within the Board's exclusive jurisdiction).

However, jurisdiction does not automatically rest solely with the Board simply because a contract is implicated in the parties' dispute. *Keenheel v. Commonwealth of Pennsylvania Securities Commission*, 565 A.2d 1147, 1149 (Pa. 1989). Rather, the plaintiff must rely upon the provisions of the contract to assert his claim. *Id.* In essence, the Board's exclusive jurisdiction attaches when the plaintiff seeks to enforce rights that are "founded in contract" against a state agency. *Id.* at 1148 (citing *Shovel Transfer and Storage, Inc. v. Simpson, et al.*, 565 A.2d 1153, 1156 (Pa. 1989)). If the claims underlying the contract have their genesis in non-contract common law or statutory law, a court may then exercise jurisdiction over the claim. *Porreco v. Maleno Developers, Inc.*, 717 A.2d 1089, 1094 (Pa. Commw. 1998).

Dr. Nahouraii relies primarily on the Commonwealth Court's decision in *Porreco* to support his argument that his claim for breach of the settlement agreement (reached in the prior Title VII action in this Court) is not founded in contract, allowing this Court to exercise its supplemental jurisdiction and adjudicate his claim in Count VI. While the state of decisional law on this issue from the Pennsylvania appellate courts is somewhat unsettled, the Court agrees that *Porreco* is instructive and bears directly on Dr. Nahouraii's case.

In *Porreco*, Edinboro University ("Edinboro") entered into a settlement agreement whereby it would permit and share in the cost of the construction of a retention pond on its property. This agreement was reached during the litigation of a negligence and nuisance action[11] by a property owner against, among other entities, Edinboro, after storm water run-off flooded

---

[11] Originally the *Porreco* case contained additional allegations beyond negligence and common law nuisance; however, the trial court transferred the action to the Commonwealth Court after Edinboro, a state agency, joined the suit. *Porreco*, 717 A.2d at 1091. The Commonwealth Court transferred the negligence and nuisance claims back to the trial court and resolved the others. *Id.* at 1091 n.5.

the owner's apartment complex. *Id.* at 1091 n.5. Three years later, the settlement agreement was still not implemented because Edinboro had failed to agree to a proposed plan for the retention pond. *Id.* at 1092. Accordingly, the developer of the retention pond brought a motion in Pennsylvania state court to enforce the settlement in an effort to finalize the engineering details. *Id.* at 1091. The trial court held that it lacked jurisdiction over the enforcement of the settlement agreement by virtue of Edinboro's status as a state entity and transferred the case to the Board of Claims. *Id.* at 1092. The developer appealed the transfer. *Id.*

The Commonwealth Court reversed the transfer, holding that the trial court had the power to enforce the settlement agreement. *Porreco*, 717 A.2d at 1094. While the action pending before the trial court was for the breach of a contract, e.g., the settlement agreement with Edinboro, the Commonwealth Court decided that the proper inquiry under the Pennsylvania Supreme Court cases of *Shovel Transfer* and *Keenheel*[12] focused on the "origin" of the rights claimed. 565 A.2d at 1156; 565 A.2d at 1148. Accordingly, the *Porreco* Court emphasized that the claims underlying the settlement agreement did not "in any sense arise from a contract...." 717 A.2d at 1094. Rather, the purpose of the agreement was to resolve Edinboro's alleged negligence in failing to mitigate storm water runoff, which created a nuisance for neighboring landowners. *Id.* The Court further noted that the trial court had managed the *Porreco* case from its institution, had begun a bench trial, and had overseen the parties' settlement agreement up until the point of the developer's motion to enforce, stating that "[d]espite the fact that Edinboro had participated in all of the trial proceedings, appeared at the non-jury trial and proposed some or all of the substantial terms of the alleged settlement, the trial court concluded that it did not have jurisdiction over Edinboro to enforce the alleged settlement agreement." *Id.* at 1091.

---

[12] The Pennsylvania Supreme Court decided *Keenheel* only a few days before *Shovel Transfer*. 565 A.2d at 1147; 565 A.2d at 1153.

8

Similar to *Porreco*, the facts as alleged by Dr. Nahouraii in Count VI of his Amended Complaint demonstrate that the underlying claims in this case have their genesis in the settlement of non-contractual, Title VII, federal litigation. The purpose of the 2006 settlement agreement was to resolve allegations of discriminatory and retaliatory actions in violation of Title VII on the part of University Defendants. Dr. Nahouraii's right to be free from such actions in the course of his employment with University Defendants springs from federal statutory law. That the parties chose to memorialize their resolution of the earlier discrimination claims in writing does not convert Dr. Nahouraii's rights asserted in the prior litigation into ones based solely on the terms of a contract under the *Porreco* analysis. Therefore, pursuant to the rubric distilled from the Pennsylvania Supreme Court cases of *Keenheel* and *Shovel Transfer* by the *Porreco* Court, the settlement agreement is "founded on" principles other than those based in contract law, allowing a court to exercise subject matter jurisdiction over Count VI of Dr. Nahouraii's Amended Complaint.

Furthermore, like *Porreco*, the facts as stated in the Amended Complaint illustrate that the central assertion of Count VI is that University Defendants never fully implemented the settlement agreement. The alleged discriminatory and retaliatory actions of University Defendants forming the basis for Count VI demonstrate that this current dispute substantively amounts to a continuation of the alleged discriminatory employment actions that lead to the 2001 lawsuit. According to Dr. Nahouraii, University Defendants returned to the former pattern of discrimination and retaliation immediately upon his return from the negotiated leave of absence, which was apparently part of the settlement agreement. Dr. Nahouraii further alleges that University Defendants never removed and destroyed certain files, repeatedly denied him the opportunity to teach graduate level courses, and refused his application for the India program, all

in contravention of the settlement agreement. To say that a court lacks subject matter jurisdiction over a continuing dispute between the parties that (1) was originally litigated in court, (2) implicates a settlement agreement that was reached while litigating in court, (3) is again brought in court, and (4) centers on the defendants' alleged failure to implement or abide by the settlement agreement's terms, construes judicial jurisdiction[13] far too narrowly.[14]

That said, the fact that, as a matter of state law, Count VI may be adjudicated in "a" court does not necessarily mean that it may be resolved in this Court, considering the Eleventh Amendment. In other words, the fact that Pennsylvania law provides that Dr. Nahouraii may bring his breach of contract claim against University Defendants in state court does not mean that this constitutes a complete waiver of immunity, which would permit the same suit to be brought in federal court. *See Dill v. Commonwealth of Pa.*, 3 F. Supp. 2d 583, 587-88 (E.D. Pa. 1998); *Demyun v. Pa. Dept. of Corr.*, No. 300CV155, 2001 WL 1083936, at *4 (M.D. Pa. Sept. 14. 2001).

A state agency may be sued in federal court, notwithstanding the Eleventh Amendment, in either of two situations: (1) when Congress has, within its legislative authority, abrogated a state agency's Eleventh Amendment immunity[15] or (2) when the state agency has either

---

[13] As opposed to Board jurisdiction.

[14] The Court also notes that, due to the short statute of limitations provided in the procurement-dispute oriented 62 Pa. C.S.A. § 1724, a strong possibility exists that the Board would deem Dr. Nahouraii's breach of contract claim untimely. *See* § 1724(c) (establishing a six-month statute of limitations from the date of a claim's accrual); *Hanover Ins. Co.*, 35 A.3d at 857-58 (Pellegrini, J. dissenting) (emphasizing that the Pennsylvania legislature in 2002 merged the Board of Claims Act into the Procurement Code). This would create an odd disconnect where Dr. Nahouraii would be barred from seeking relief for the alleged breach of the settlement agreement in a state-created forum, yet would continue to litigate the underlying discrimination that led to the supposed breach in a federal forum.

[15] Title VII is an expression of Congress' intent to abrogate Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Shawer v. Indiana Univ. of Pa.*, 602 F.2d 1161, 1164 (3d Cir. 1979).

consented to be so sued[16] or has waived its right to object. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985) (abrogated by statute on other grounds); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Notwithstanding the thicket of Pennsylvania appellate case law and the application of the Eleventh Amendment doctrine, this Court's exercise of subject matter jurisdiction over Count VI is nonetheless appropriate here in furtherance of the Court exercising its continuing jurisdiction over the earlier Title VII litigation and its settlement. Specifically, the final docket entry in Civil Action Number 01-2461 in this Court is not a dismissal order, but a closure order which provides:

> IN THE UNITED STATES DISTRICT COURT
> FOR THE WESTERN DISTRICT OF PENNSYLVANIA
>
> | | |
> |---|---|
> | DR. ATA NAHOURAII ) | |
> | Plaintiff, ) | |
> | ) | |
> | v. ) | Civil Action No. 01-2461 |
> | ) | |
> | INDIANA UNIVERSITY OF ) | |
> | PENNSYLVANIA, ET AL. ) | |
> | Defendants. ) | |
>
> ORDER OF COURT
>
> AND NOW this 6th day of October, 2006, the court has been advised that a resolution has been reached in the instant case and the only remaining matter is the submission of a stipulation of discontinuance for approval by the court. Therefore, there being no further action needed by the court at this time, IT IS HEREBY ORDERED that the Clerk of Court is directed to mark this case closed.
>
> Nothing contained in this order shall be considered a dismissal or disposition of his matter <u>and this court shall retain jurisdiction</u>. Should further proceedings in it become necessary, or desirable, either party may initiate it in the same manner as if this order had not been entered.

---

[16] Pennsylvania has by statute robustly claimed its Eleventh Amendment immunity, subject to relatively narrow exceptions. 42 Pa. Cons. Stat. Ann. § 8521(b) (2011); *McLaughlin v. State System of Higher Education*, No. Civ. A. 97-cv-1144, 1999 WL 239408 at *5 n.4 (E.D. Pa. Mar. 31, 1999).

BY THE COURT:

s/ Gary L. Lancaster, J.
Hon. Gary L. Lancaster,
United States District Judge

cc: All Counsel of Record

Nahouraii v. Ind. Univ. of Pa., No. 01-2461 (W.D. Pa. filed Dec. 21, 2001) (ECF Doc. 67, Oct. 10, 2006) (emphasis added).

Whatever the parties' reasons for not causing the final and complete dismissal of the 2001 lawsuit, the above-cited Order reveals that this Court specifically retained jurisdiction over Dr. Nahouraii's Title VII action, jurisdiction which does not appear to have been relinquished by any subsequent order. Given this retained jurisdiction, in light of applicable Pennsylvania and Eleventh Amendment decisional law, this Court may properly exercise jurisdiction over Count VI of the Amended Complaint in order to enforce the parties' settlement agreement from the prior action. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

University Defendants have also argued that, to the extent Count VI is viewed as a state claim as to which there is no independent basis for the exercise of federal jurisdiction, the Court should decline to exercise supplemental jurisdiction over it. A district court can, of course, adjudicate a claim arising under state law that is so related to a federal claim within the court's original jurisdiction that both claims form part of the same case or controversy. 28 U.S.C. § 1367 (2006). Several requirements must be met to establish the necessary jurisdictional predicate for supplemental jurisdiction. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995). A plaintiff must bring a claim arising under federal law to confer

BY THE COURT:

s/ Gary L. Lancaster, J.
Hon. Gary L. Lancaster,
United States District Judge

cc: All Counsel of Record

Nahouraii v. Ind. Univ. of Pa., No. 01-2461 (W.D. Pa. filed Dec. 21, 2001) (ECF Doc. 67, Oct. 10, 2006) (emphasis added).

Whatever the parties' reasons for not causing the final and complete dismissal of the 2001 lawsuit, the above-cited Order reveals that this Court specifically retained jurisdiction over Dr. Nahouraii's Title VII action, jurisdiction which does not appear to have been relinquished by any subsequent order. Given this retained jurisdiction, in light of applicable Pennsylvania and Eleventh Amendment decisional law, this Court may properly exercise jurisdiction over Count VI of the Amended Complaint in order to enforce the parties' settlement agreement from the prior action. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

University Defendants have also argued that, to the extent Count VI is viewed as a state claim as to which there is no independent basis for the exercise of federal jurisdiction, the Court should decline to exercise supplemental jurisdiction over it. A district court can, of course, adjudicate a claim arising under state law that is so related to a federal claim within the court's original jurisdiction that both claims form part of the same case or controversy. 28 U.S.C. § 1367 (2006). Several requirements must be met to establish the necessary jurisdictional predicate for supplemental jurisdiction. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995). A plaintiff must bring a claim arising under federal law to confer

original jurisdiction upon the district court.[17] *Id.* Once original jurisdiction is established, the court may adjudicate the plaintiff's state law claim if both it and the federal claim derive from a "common nucleus of operative facts," such that the claims would "ordinarily be expected to be tried in one judicial proceeding." *Id.* Here, the claimed breach of the settlement agreement in this case is predicated upon the same stream of alleged discriminatory and retaliatory actions that form the basis of Dr. Nahouraii's Title VII and Equal Protection claims. Therefore, even if Count VI were viewed as being a creature of state law only, the Court may, nonetheless, exercise supplemental jurisdiction over it.

### *III. Conclusion*

For the foregoing reasons, University Defendants' Partial Motion to Dismiss the Amended Complaint is DENIED.

Mark R. Hornak
United States District Judge

Dated: March 20, 2012

cc: All Counsel of Record

---

[17] This requirement is easily met here as Dr. Nahouraii brings claims arising from an alleged violation of rights conferred by Title VII and the Fourteenth Amendment of the Constitution, claims otherwise within this Court's subject matter jurisdiction. *See* 28 U.S.C. § 1343 (2006); 42 U.S.C. § 1983 (2006).