# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATA NAHOURAII, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:11-cv-00973 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| | ) | |
| INDIANA UNIVERSITY OF | ) | |
| PENNSYLVANIA and ROBERT CAMP, | ) | |
| in his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

According to Dr. Ata Nahouraii, his academic life at the Indiana University of Pennsylvania has been rife with controversy and conflict. His boss, Dr. Robert Camp, claims that the root cause of that is Dr. Nahouraii himself. Dr. Nahouraii points the responsibility arrow in exactly the opposite direction.

The Motions addressed in this Opinion are the latest stops along the tortuous road to trial in a case that was filed in this Court four years ago, which itself arose out of another case in this Court that settled in 2006[1], the origin of which was a conflict between the parties dating back to the year 2000. Dr. Nahouraii claims in any number of ways that he has been dealt with unlawfully by his employer, Indiana University of Pennsylvania ("IUP"), often via Dr. Camp. IUP and Dr. Camp say this is not so and that all decisions regarding Dr. Nahouraii's work assignments, duties, and evaluations were made lawfully and legitimately.

---

[1] Civil Action 01-cv-2461-GLL.

The Court now has before it cross-motions for Partial Summary Judgment and Plaintiff's Motion for leave to file a Second Amended Complaint. Because the Court concludes that it does not have jurisdiction over Dr. Nahouraii's asserted breach of contract claim arising from the settlement document from the 2001 lawsuit in this Court, and that even if it did, Dr. Nahouraii has forfeited his ability to recover any such a remedy for a variety of reasons, Dr. Nahouraii's Motion for Summary Judgment is denied. For the same reasons, the Defendants' Motion for Partial Summary Judgment as to that claim is granted, and, as to that Motion's other bases, is denied. Finally, Plaintiff's Motion for leave to file a Second Amended Complaint is granted, solely out of an abundance of precision, since, as noted at length below, the Plaintiff may pursue the matters he raises in it whether or not such amendment is necessary or permitted.

## I.   **BACKGROUND**

This case has its origins in events involved in that earlier lawsuit between the parties. Dr. Ata Nahouraii is a professor at the Eberly College of Business, which is part of Indiana University of Pennsylvania, a Defendant in this action. ECF No. 56 at ¶1. Robert Camp, another Defendant who is being sued in his individual and official capacities, has been the Dean of Eberly College for over thirty years. ECF No. 56 at ¶2. Dr. Nahouraii was tenured in 1983 and has been a professor at Indiana University of Pennsylvania ("IUP") since 1992. ECF No. 56, at ¶5. The parties have had an uneasy relationship[2] for quite a while now. As this Court explained in a previous Opinion:

> Dr. Nahouraii's seemingly troubled relationship with his employer dates back to the Fall Semester of 2000, when University Defendants removed Dr. Nahouraii from teaching duties. Around this time, Dr. Nahouraii filed discrimination charges based on age, race, and retaliation, and brought an employment discrimination lawsuit against University Defendants in the United States District Court for the Western District of Pennsylvania

---

[2] To put it mildly. Based on the record matters before the Court, Dr. Nahouraii generally believes that Dr. Camp is unfairly out to get him; Dr. Camp believes that Dr. Nahouraii isn't very good at what he does and that IUP students suffer as a result.

on December 21st, 2001, Civil Action Number 2:01–cv–02461–GLL. The parties' dispute culminated, after several years, in a settlement agreement executed in December 2006.

*Nahouraii v. Indiana Univ. of Pennsylvania*, No. 11-973, 2012 WL 954645, at *1 (W.D. Pa. Mar. 20, 2012) (footnotes omitted). The settlement provided Dr. Nahouraii a lump sum payment of $150,000 and one year's paid release from teaching duties in exchange for his formally withdrawing and dismissing the 2001 litigation. ECF No. 56, at ¶¶7, 10. Although that litigation was never formally dismissed on the docket by Dr. Nahouraii as he promised it would be, Dr. Nahouraii received his settlement funds in full on March 20, 2007. ECF No. 56, at ¶ 11.

Dr. Nahouraii returned to IUP in the spring of 2008. ECF No. 56, at ¶14. It was not long, however, before things soured, and on September 29, 2008, Dr. Nahouraii filed a Charge of Discrimination with the EEOC and PHRC alleging unlawful treatment on account of his age, race, national origin and retaliation.[3] ECF No. 57-1, at 63–69. Dr. Nahouraii filed another such Charge on December 14, 2010, again claiming discrimination on the basis of race, national origin, and age, as well as retaliation. ECF No. 57-1, at 71–77. The Charges alleged, among other things, that IUP and, "in particular Dean Camp," had discriminated and retaliated against Dr. Nahouraii since his return to the IUP campus. ECF No. 56, at ¶17. The substance of the alleged discrimination was, among other things, that the Defendants had not permitted Dr. Nahouraii to teach a three week graduate course in the People's Educational Society – School of Management ("PES") program in Bangalore, India, had denied Dr. Nahouraii the right to teach certain graduate level courses stateside, had denied Dr. Nahouraii a research release, had required Dr. Nahouraii to teach one extra undergraduate course and had not allowed him to get

---

[3] Relations actually appear to have broken down well before Dr. Nahouraii returned to campus. In September 2007, in an email written to IUP President Atwater about the upcoming spring semester schedule, Dr. Nahouraii wrote, "Please accept this as a notice to you that Dr. Camp has violated Section D of the Settlement Agreement." ECF No. 49, at 32. Suspicion of Dr. Camp pervades Dr. Nahouraii's correspondence. On October 4, 2007, in another email to President Atwater, he wrote, "I need to alert you that I fear that Dr. Camp's new scheme to circumvent the Settlement Agreement and deny me the opportunity to teach MIS courses is the idea of Reorganization." ECF No. 49, at 34.

paid for developing an on-line course, had not permitted Dr. Nahouraii to teach graduate level Executive MBA ("EMBA") courses, had told him his grievances were "dumb," had required Dr. Nahouraii to develop a professional development plan, and had changed Dr. Nahouraii's summer course assignment, making it less desirable. ECF No. 56, at ¶¶ 18–27.

In his First Amended Complaint in this case, Plaintiff brings Counts for Retaliation under Title VII and the PHRA (Counts I and III), Discrimination on the Basis of National Origin under Title VII (Counts II), Discrimination on the Basis of National Origin and/or age under the PHRA (Count IV), Denial of Equal Protection under § 1983 (Count V), and Breach of Contract (Count VI).[4] The breach of contract claim alleges that the 2006 settlement agreement provided that (1) he would retain full eligibility to teach graduate level (EMBA) courses and participate in IUP's overseas, academic program in India, (2) all records relating to his removal from teaching, including student complaints and various internal correspondence, would be purged from IUP's files, and (3) the parties would "deal with each other in the future in good faith as obligated under the CBA." ECF No. 11, at ¶¶ 15–17.

Neither party seeks summary judgment on all Counts. This means that some parts of this case are headed for trial, since even if the Motions were granted in their entirety, triable issues would remain. Plaintiff seeks summary judgment in his favor only on his breach of contract claim. The Defendants seek summary judgment on a larger spread of issues.

Plaintiff also seeks leave to file a Second Amended Complaint. After hearing oral argument on the cross-motions for partial summary judgment, the Court entered an Order on September 30, 2014, directing that "Plaintiff may file any Motion requesting leave to Amend its

---

[4] The Plaintiff's pending Motion to Amend his Complaint a second time does not affect the substance of the Counts in the First Amended Complaint. It seeks to add no new claims or parties but rather merely seeks to set forth additional relevant events that have occurred since the filing of the First Amended Complaint. ECF No. 70, at ¶¶ 4–8. The Court will address that Motion later in this Opinion.

Complaint on or before 10/22/2014, as to any recovery sought by Plaintiff for events that occurred after the First Amended Complaint [ECF No. 11] was filed, and its reasoning and supporting authority for why the Amendment should be permitted. The Defendant shall then have twenty-one (21) days after any such filing to file a response to Plaintiffs Motion." Thereafter, Plaintiff filed such a Motion and supporting brief and attachments, ECF Nos. 70 & 71, and Defendants filed a brief in opposition. ECF Nos. 73 and 74.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001). "When there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (alteration and internal quotation marks omitted). "To defeat a motion for summary judgment, the nonmoving party must raise more than some metaphysical doubt as to the material facts, and the court must determine that a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (internal citations, alterations, and quotation marks omitted).

## III.  DISCUSSION

### A.  Cross-Motions for Summary Judgment: Breach of Contract

#### 1.  Introduction

Because what follows is somewhat complicated, the Court believes it is helpful to briefly summarize its analytical approach. Plaintiff brings a Motion for Summary Judgment as to Count VI of his Amended Complaint in which he seeks damages for the Defendants' alleged breach of the settlement agreement these parties reached in 2006. The Court concludes that it does not have jurisdiction over such a claim because IUP (and when acting on its behalf, Dr. Camp) is considered part of the Commonwealth of Pennsylvania, and, because of Pennsylvania's limited waiver of immunity, claims alleging a breach of a contract involving the Commonwealth of Pennsylvania may only be brought before the Pennsylvania Board of Claims. That immunity also bars this Court from exercising its supplemental jurisdiction over the breach of contract claim.

There is one instance in which a court could potentially have jurisdiction over a settlement agreement between two parties when one of them is the Commonwealth of Pennsylvania. A motion to enforce a settlement agreement between the parties could, in some circumstances, be brought before this Court, but only if the parties, in reaching their settlement agreement, had specifically provided that this Court would retain ancillary jurisdiction to enforce that settlement agreement.

In *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), the Supreme Court identified two ways in which the parties to a settlement agreement could provide for a federal district court to retain ancillary jurisdiction over enforcement of a settlement agreement: (1) the court may include the settlement agreement in its dismissal order, or (2) it

may include a clause in such an order that states that the court is explicitly retaining jurisdiction to enforce the settlement agreement. Neither verbiage is present in this case, and in fact the language chosen by the parties provides exactly the opposite.

Alternatively, the Court also concludes that even if it did have adjudicatory power over a claimed breach of the parties' settlement agreement, the language of the settlement agreement itself provides that it is not specifically enforceable by any court, and not just this one. The agreement further provides that, while the Plaintiff's only remedy for a claimed breach of that agreement is to refile the original lawsuit, he also disclaimed any right to bring claims based on any events that occurred before December 12, 2006, the date the settlement agreement was signed. Thus, even though Plaintiff's former lawsuit was never formally dismissed and could appear to still be "live," Plaintiff would not be allowed to pursue any of the claims in that lawsuit based on his own limitation of remedies in the settlement agreement. Finally, because Dr. Nahouraii did not fulfill his obligation under that agreement to dismiss the 2001 lawsuit, he may not recover damages for a claimed breach of that same agreement.

### 2. Analysis

Dr. Nahouraii alleges that the Defendants breached the terms of the 2006 settlement agreement, which he says amounts to a breach of contract. He thinks that he is entitled to summary judgment on this Count (Count VI) because, according to him, there is no genuine dispute as to any material fact in these regards. He argues that he has established all of the elements of a claim for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach, and (3) damages. ECF No. 47, at 2. Defendants also moved for summary judgment on the breach of contract claim, arguing that this Court lacks jurisdiction to adjudicate such a breach of contract action, a state law claim that, because of the Commonwealth of

Pennsylvania's limited waiver of its Eleventh Amendment immunity, must be brought before the Pennsylvania Board of Claims (if anywhere).

As set forth above, the Court concludes (1) that it lacks jurisdiction to adjudicate the Plaintiff's breach of contract claim, and (2) that, pursuant to the terms of the parties' 2006 settlement agreement (which specifically provided that the "defendants undertaking and promises are not specifically enforceable as such per se in the United States District Court for the Western District of Pennsylvania or any other legal forum," ECF No. 49, at 6), even if the "breach of contract" claim were construed by the Court as simply a motion to enforce the 2006 settlement agreement arising from the 2001 litigation in this Court, the Court would still lack the authority to adjudicate this claim based on the specific terms of the parties' settlement agreement.

In its prior Memorandum Opinion, the Court addressed the issue of its own jurisdiction. ECF No. 19; *Nahouraii v. Indiana Univ. of Pa.*, No. 11-973, 2012 WL 954645, at *6 (W.D. Pa. Mar. 20, 2012). In that Opinion, the Court denied the Defendants' partial Motion to Dismiss the Amended Complaint. ECF No. 12. The Court explained that the final docket entry in the original action between these parties (Civil Action No. 01-2461, the one that led to the 2006 settlement agreement) provided that the Court retained jurisdiction over the action: "Nothing contained in this order shall be considered a dismissal or disposition of his matter and this court shall retain jurisdiction." *Nahouraii v. Indiana Univ. of Pa.*, No. 11-973, 2012 WL 954645, at *6 (W.D. Pa. Mar. 20, 2012).

The Court reasoned:

[T]he above-cited Order reveals that this Court specifically retained jurisdiction over Dr. Nahouraii's Title VII action, jurisdiction which does not appear to have been relinquished by any subsequent order. Given this retained jurisdiction, in light of applicable Pennsylvania and Eleventh Amendment decisional law, this Court may properly exercise

jurisdiction over Count VI of the Amended Complaint in order to enforce the parties' settlement agreement from the prior action.

*Nahouraii*, 2012 WL 954645, at *6.

The Court cited *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) for the proposition that a district court has the power to enforce settlement agreements where it otherwise lacks subject matter jurisdiction only if the order of dismissal contains an express provision "retaining jurisdiction." If such a term is included in a court's order, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

All of this seemed fine at the time. But now, after the parties have argued at length two sets of dispositive motions and engaged in litigation for over three years, the parties have filed with the Court a copy of the 2006 Settlement Agreement.[5] ECF No. 49, at 3; ECF No. 57-1, at 31.

This is a game-changer.

The substance of that settlement agreement reveals the parties' intent in a way that fundamentally changes the basis for the Court's prior reasoning, compelling the Court to conclude that litigation of this claim in this Court cannot continue. Of particular note, the settlement agreement includes the following terms, which directly address the remedies that the parties did and did not agree to, and the adjudicatory power of this Court, in the event of a claimed breach of that agreement:

> IT IS ACKNOWLEDGED, UNDERSTOOD AND AGREED, that this settlement agreement and release of all claims, with due regard for the pertinent provisions of the Commonwealth Attorneys Act, is not, cannot and shall not be construed to be a consent decree. *The defendants undertaking and promises are not specifically enforceable as such per se in the United States District Court for the Western District of Pennsylvania*

---

[5] The Court noted in a footnote in its prior Opinion that "[t]he parties have not disclosed the settlement agreement to this Court." *Nahouraii*, 2012 WL 954645, at *1 n.5.

*or any other legal forum*. Defendants agree and acknowledge, however, that while this lawsuit, pursuant to the terms of this settlement agreement and release of all claims, will be dismissed by Dr. Nahouraii acting through his counsel, Mr. Lieber, with all deliberate speed after his signature is affixed to the foresaid agreement in accordance with its terms indicating his intent to be bound thereby, that Dr. Nahouraii yet retains the right to refile this suit after its dismissal by him pursuant to the terms of his settlement agreements and release of all claims, in the event that each or any of the defendants materially fail to fulfill the material terms of this settlement agreement or for any other reason.

ECF No. 49, at 6–7 (emphasis added).

This clause makes all the difference in the world. It lets the Court know that the parties did not intend that the Court retain the power to enforce the settlement agreement. *Kokkonen* is quite clear on this: "If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so." 511 U.S. at 381. A "court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract . . . *if the parties agree*." *Id.* at 381–82. (emphasis added). But *Kokkonen* explicitly counsels that "[a]bsent such action . . . enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

And there is no such independent jurisdictional basis here. In the first place, except to the extent of a legislative waiver of immunity, the Eleventh Amendment deprives this Court of jurisdiction over any breach of contract damage claim by Dr. Nahouraii against IUP, and there is no such waiver of that immunity applicable to this claim. 62 Pa. Cons. Stat. § 1724. Second, while the language of the settlement agreement appears to make Dr. Camp a beneficiary of Dr. Nahouraii's release of claims contained in it, it has no provisions creating enforceable contractual duties on the part of Dr. Camp himself.[6] Third, the principles of supplemental

---

[6] Given the substance of the claimed breach of contract, Dr. Camp could not have had any such contractual duties in his individual capacity since the alleged breach has only to do with things Dr. Camp did (or did not) do in his

10

jurisdiction pursuant to 28 U.S.C. § 1367 have no application in a case in which the Eleventh

Amendment applies, as it does here. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

89, 121 (1984) (holding that "neither pendent jurisdiction nor any other basis of jurisdiction may

override the Eleventh Amendment" and so "[a] federal court must examine each claim in a case

to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment"). At best,

all that is left is the "ancillary" enforcement jurisdiction recognized in *Kokkonen*, which the

Court concludes has been expressly disclaimed by the parties.

In order for a federal court to have ancillary jurisdiction to enforce a settlement

agreement, a dismissal order must do one of two things:

> The situation would be quite different if the parties' obligation to comply with the terms
> of the settlement agreement had been made part of the order of dismissal—either by
> separate provision (such as a provision "retaining jurisdiction" over the settlement
> agreement) or by incorporating the terms of the settlement agreement in the order. In that
> event, a breach of the agreement would be a violation of the order, and ancillary
> jurisdiction to enforce the agreement would therefore exist.

*Kokkonen*, 511 U.S. at 381. The Third Circuit has clarified the parameters of the "first *Kokkoken*

exception," which was the one relied on by this Court in its previous opinion. In *Shaffer v. GTE

N., Inc.*, 284 F.3d 500, 503 (3d Cir. 2002), the court concluded that "reinstatement of an action,

which revives the underlying claim and sends the litigants back to the original battlefield, is

totally different from the enforcement of the terms of a settlement agreement because one of the

parties has not complied with those terms." This echoed *Kokkonen*'s point that "[e]nforcement

of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit,

and hence requires its own basis for jurisdiction." *Kokkonen,* 511 U.S. at 378. Thus, the *Shaffer*

court held that "language in a dismissal order providing for the reinstatement of an action if a

---

official capacity and on behalf of IUP. *See* 1 Pa. Cons. Stat. § 2310; *Ismael v. Ali*, 276 F. App'x 156, 160 (3d Cir. 2008).

settlement agreement is not consummated does not satisfy the first *Kokkonen* precondition for the enforcement of the settlement agreement itself." *Shaffer*, 284 F.3d at 504.[7]

This situation would have been a lot simpler to untangle if Dr. Nahouraii had formally dismissed the 2006 lawsuit, as the settlement agreement stated he would.[8] ECF No. 49 at 7. What we are now left with is the administrative closure order from Judge Lancaster, entered to statistically close that case and including language that the Court would "retain jurisdiction" without specifying what it retained jurisdiction to do. In the usual case, as noted by Justice Scalia in *Kokkonen*, parties who want a federal court to hang on to a case for the purposes of interpreting or enforcing a settlement agreement put that express proviso in the stipulation that they submit pursuant to Federal Rule of Civil Procedure 41 to formally dismiss a case.

While that did not happen here, what we do know is that the parties to the 2006 settlement agreement plainly did *not* wish to provide for this Court's enforcement of that settlement agreement. Thus, to the extent that Judge Lancaster, following the usual course in administratively closing the 2001 case, retained jurisdiction to enforce the settlement of parties when he entered his closure Order (even if that purpose was not stated in that Order), the language of the settlement agreement (signed 8 months later) itself would have caused that retention to evaporate. The reason for this is that the settlement agreement itself delineates that

---

[7] *Shaffer* counsels that district courts have enforcement power over settlement agreements only in limited situations, and for the various reasons noted, this is not one of them. To the extent that the Court's prior Memorandum Opinion can be read differently, the Court would note that, given what we now know the settlement agreement says, such a reading is inconsistent with *Kokkonen* and subsequent Third Circuit precedent which this Court is obligated to apply. Given this reality, the Court is constrained to heed the words of Justice Jackson: "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." *Massachusetts v. United States*, 333 U.S. 611, 639–40 (1948) (Jackson, J., dissenting). With the benefit of the now-filed settlement agreement, the Court must now conclude that it has no jurisdiction to enforce the settlement agreement, and that if it did, Dr. Nahouraii has for various reasons forfeited any such claims, notwithstanding what it said on that topic before.

[8] Which yields yet another reason that his breach of contract claim may not proceed, since his failure to fulfill that express condition means that he may not recover any damages for non-performance. *Shovel T'fr. and Storage, Inc. v. PLCB*, 739 A.2d 133, 139 (Pa. 1999); *see Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Amer.*, 693 F.3d 417, 430 n.6 (3d Cir. 2012).

(1) it is not a consent decree, (2) the terms are not specifically enforceable in this (or any other) court, and (3) the Plaintiff's only remedy for a material breach of the agreement's terms is to restart the 2001 suit. The language of the settlement agreement itself thus illuminates what was obscure earlier in the case: The Court has neither independent jurisdiction to enforce it, nor *Kokkonen*-generated ancillary jurisdiction to enforce it by virtue of some sort of retained jurisdiction. Furthermore, by limiting the Plaintiff's remedy to the right to refile the 2001 lawsuit,[9] the agreement falls squarely outside the *Kokkonen* precondition for the enforcement of the settlement agreement as explained in *Shaffer*, 284 F.3d at 504 ("We hold today that language in a dismissal order providing for the reinstatement of an action if a settlement agreement is not consummated does not satisfy the first *Kokkonen* precondition for the enforcement of the settlement agreement itself.").

Once any such ancillary jurisdictional basis to enforce the settlement agreement has been eliminated, Count VI of Dr. Nahouraii's complaint becomes a straightforward state law breach of contract action rather than an effort to specifically enforce the 2006 settlement agreement. As noted above, such a claim could ordinarily come under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (2006). But the Commonwealth has not waived its Eleventh Amendment immunity to permit that, and a state law breach of contract claim against the Commonwealth of Pennsylvania[10] may only be brought before the Pennsylvania Board of Claims. *See* 62 Pa. Cons. Stat. § 1724. This Court previously relied on *Porreco v. Maleno Developers, Inc.*, 717 A.2d 1089, 1094 (Pa. Commw. Ct. 1998), for the proposition that the Pennsylvania Board of Claims did not have exclusive jurisdiction over contract claims in a

---

[9] And the Amended Complaint does not aver that that is what the Plaintiff is doing with this case.

[10] IUP is part of the State System of Higher Education, 24 Pa. Cons. Stat. § 20-2002-A(a)(7), and is therefore immune from suit in federal court, *see Skehan v. State System of Higher Education*, 815 F.2d 244, 247 (3d Cir. 1987), and as noted above at note 7, so is Dr. Camp.

certain situation. Citing *Porreco*, this Court wrote, "If the claims underlying the contract have their genesis in non-contract common law or statutory law, a court may then exercise jurisdiction over the claim." *Nahouraii*, 2012 WL 954645, at *4.

With the benefit of the actual settlement agreement language now before it, the Court concludes that *Porreco* is inapposite. The *Porreco* court's holding was limited to cases in which the suing party seeks to enforce a settlement agreement. 717 A.2d at 1092. The *Porreco* court made this clear: "Because the underlying claims against the Commonwealth in this case do not in any sense arise from a contract, jurisdiction over Maleno's motion to enforce the settlement remains in the trial court." *Id.* at 1094. Because the settlement agreement here provides that Dr. Nahouraii's breach of contract Count is not (and in fact cannot be) a motion to enforce a settlement agreement, *Porreco* does not apply.

When the rights sought to be enforced are created by a contract, the state Board of Claims retains exclusive jurisdiction over the action. *Keenheel v. Com., Pennsylvania Sec. Comm'n*, 565 A.2d 1147, 1149 (Pa. 1989) ("In order for the objectives of the Board of Claims to be fulfilled, however, a claim must be instituted against the Commonwealth seeking the enforcement of rights that were created by contract."). The Pennsylvania Supreme Court has been quite direct on this point: "the focus is upon the origin of the rights claimed." *Shovel Transfer & Storage, Inc. v. Simpson*, 565 A.2d 1153, 1156 (Pa. 1989). If the action "derives necessarily from the rights and obligations created by the contract," and it therefore "assumes the nature of a breach of contract action in which a traditional remedy for the breach . . . is sought," then "[t]he proper forum for this type of action . . . is the Board of Claims." *Id.* Other district courts have taken the position that a pure breach of contract claim against the Commonwealth of Pennsylvania must be brought only before the Pennsylvania Board of Claims:

> Count I sets forth a state breach of contract claim against the Commonwealth of Pennsylvania. The Pennsylvania Legislature has waived state immunity to breach of contract claims, but only to a limited extent. In 72 Pa.S.A. §§ 4651-1 through 4651-10, the Legislature created the Board of Arbitration of Claims. The Board of Claims has exclusive jurisdiction over contract claims against the Commonwealth and its agencies. *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Co.,* 26 Pa.Commw. 260, 363 A.2d 817 (1976); *Kreider v. Commonwealth, Human Relations Commission,* 9 Pa.Commw. 491, 308 A.2d 642 (1973). Therefore, this court does not have jurisdiction to hear plaintiff's breach of contract claim. Accordingly, that claim is dismissed.

*Seeney v. Kavitski,* 866 F. Supp. 206, 210 (E.D. Pa. 1994) *aff'd sub nom. Seeney v. Cmty. Action Agency of Delaware Cnty., Inc.,* 107 F.3d 8 (3d Cir. 1997); *see also Urella v. Pa. State Troopers Ass'n,* 628 F. Supp. 2d 600, 607 (E.D. Pa. 2008) (holding that "[u]nder 62 Pa.C.SA. § 1724, Pennsylvania has waived sovereign immunity over certain breach of contract claims against Pennsylvania agencies," but that "jurisdiction over these claims is vested exclusively in the Pennsylvania Board of Claims, and not this Court").

Because the parties did not intend for the Court to have the power to enforce the settlement agreement, via a breach of contract claim or otherwise, the breach of contract claim can no longer be construed as an effort to have this Court specifically enforce its provisions with a *Kokkonen*-generated retention of ancillary federal jurisdiction.

A few final words on this subject. Given that the Court concludes that it lacks jurisdiction to adjudicate this claim, and given that it has the power to adjudicate only claims as to which it does possess such jurisdiction, it cannot adjudicate the merits of such a breach of contract claim. That said, if it did have such jurisdiction, the Court would alternatively conclude that the relevant settlement agreement language reflects the parties' agreement that Dr. Nahouraii has no such claim. The reason for this is that Agreement's unambiguous language provides that if the Plaintiff thought that the counterparty to the 2006 settlement agreement breached that agreement, his remedy did not include a breach of contract action before *any* tribunal. Thus, if

this Court did possess the authority to adjudicate this claim because the 2001 civil action had never been formally dismissed (or for some other reason), Dr. Nahouraii has by that settlement agreement stipulated and elected to forgo any right to enforce it by a breach of contract action, and instead would have to elect to restart the prior federal lawsuit. ECF No. 49, at 7. *See Wedgewood Diner, Inc. v. Good*, 534 A.2d 537, 538 (Pa. Super. Ct. 1987). In the next sentence the settlement agreement effectively constrains the reach of that right to refile:

> "It is agreed, acknowledged and understood by Dr. Nahouraii, however, that if he otherwise would refile this suit, after its dismissal pursuant to the terms of this settlement agreement, any and all of his claims for damages and attorneys' fees have been satisfied up to and including the date on which he signs the aforesaid settlement and release of all claims by the consideration provided therefor."

*Id.*

Dr. Nahouraii signed the settlement agreement on December 12, 2006. The terms of the settlement agreement therefore appear to allow Dr. Nahouraii to restart the prior litigation—just not as to anything that occurred before December 12, 2006.[11] Dr. Nahouraii was then as now represented by able counsel, in both the litigation of his prior lawsuit and in the negotiation of the settlement agreement resulting from it, and necessarily had his reasons for agreeing to a term that eliminated his ability to enforce via a breach of contract action certain other terms that are now seemingly important to him (such as the term that allegedly establishes his continuing eligibility to teach EMBA and PES classes). It is not for this Court to speculate what those reasons were. It matters only that Dr. Nahouraii, with the assistance of counsel, elected to forgo his right to bring claims based on any actions that occurred before December 12, 2006, and therefore what may not be part of this lawsuit in any event is any claim by Dr. Nahouraii that either Defendant breached that settlement agreement. *See Gregory v. Derry Twp. Sch. Dist.*, 418

---

[11] While the Court is to interpret unambiguous contracts as a matter of law, *see, e.g., Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994), the ultimate litigation of the settlement agreement would have to occur in the proper forum, which is the Pennsylvania Board of Claims.

F. App'x 148, 152 (3d Cir. 2011). Plaintiff's Motion for Partial Summary Judgment is denied and Defendants' Motion for Partial Summary Judgment on the breach of contract claim is granted. The Plaintiff's breach of contract claim is dismissed without prejudice for lack of jurisdiction.

**B.** **Defendants' Remaining Motions for Partial Summary Judgment:**

The remainder of Defendants' Motion for Summary Judgment can be divided up into four basic sections that, for clarity's sake, should be addressed one at a time.

### 1. Failure to Assign Plaintiff Graduate Courses

Defendants argue that the Plaintiff has not established that an adverse action occurred with respect to his allegation that the Defendants' prevented him from teaching EMBA courses. Their brief on this point reads, in its entirety, as follows:

> In ¶38 of his Amended Complaint Plaintiff alleges that he was denied the opportunity to teach a graduate level EMBA Course in spring 2009. He then references denial of the opportunity to teach Graduate Courses as an adverse employment action taken against him in Counts II, IV, and VI of the Amended Complaint. However, Dr. Nahouraii according to the discovery documents did teach an EMBA Course in spring 2009.
>
> Further, Plaintiff's claims of not receiving research releases as being retaliatory and Discriminatory are not factually supported.

ECF 55, at 9 (record citations omitted).[12] As set forth below, Plaintiff has demonstrated that there is a genuine issue of material fact with respect to this issue, Defendants' Motion for Summary Judgment on this ground is denied.

The basis of Defendants' argument appears to be that, because Dr. Nahouraii was permitted to teach one (1) EMBA class during the past six (6) years, Dr. Nahouraii cannot allege that the otherwise uniform prohibition of his teaching those classes amounts to an adverse action

---

[12] Count II alleges Title VII discrimination on the basis of national origin, Count IV alleges PHRA discrimination on the basis of national origin and/or age, and Count VI alleges breach of contract.

17

as a matter of law. The record includes facts that, if believed, point in the other direction. For instance, there is an email from Dr. Rodger to Dr. Camp that states: "In the case of Dr. Nahouraii being scheduled for the graduate class this summer, he is approved to teach at the graduate level, and was high enough on the rotation list to be assigned the course. Removing him from the course would discriminate against Dr. Nahouraii in terms of the summer rotation and the credits he would be offered during the summer." ECF No. 50, at 9. Dr. Nahouraii also points to an email in which Dr. Camp wrote to a few other colleagues that "[Dr. Nahouraii's] lack of eligibility to teach at the graduate level in either area is the most critical issue." ECF No. 49, at 35.

As for the one EMBA class he was permitted to teach, Plaintiff explains, "After Dean Camp wrongfully had removed that EMBA course from Dr. Nahouraii, the Provost specifically directed him to reinstate that class because Dr. Nahouraii undoubtedly was eligible to teach it." ECF No. 64, at 14. Furthermore, "since the Spring 2009 semester, Dr. Nahouraii has not been permitted to teach a single EMBA course based on false claims that he is not eligible to do so." *Id.* There is also evidence indicating that Dr. Camp routinely rearranged Dr. Nahouraii's schedule. In one instance, Dr. Camp, in an email discussing his decision to remove Dr. Nahouraii from an EMBA class, stated: "I told Dr. Werner that I think we ought to just take a grievance and let it go to arbitration. Whatever amount of money we might have to pay him in an arbitration would seem to pale beside our continuing loss of credibility in placing him in front of students. He is a habitual embarrassment to the university." ECF 50, at 10.

Thus, there is a genuine issue of material fact regarding whether the near total lack of Dr. Nahouraii's teaching EMBA classes was a Defendant-generated adverse action for Title VII purposes. The fact that he was ultimately permitted to teach one (1) EMBA course in spring

2009 does not in itself conclusively demonstrate otherwise. Because Dr. Nahouraii alleges that other "eligible" faculty would have taught such a class more than once, and has backed it up with record evidence, see, e.g., ECF No. 52, at 41–42, 48, 51, 53–59; ECF No. 53, at 11, the Court cannot resolve this claim in favor of the Defendants at summary judgment. Therefore, because Plaintiff has established that there is a disputed issue of material fact about whether these events constitute adverse action, Defendants' Motion for Partial Summary Judgment on this ground is denied.

### 2. Equal Protection

The Defendants argue that an Equal Protection claim[13] may not be brought for age-related claims or retaliation claims. Plaintiff agrees that the ADEA preempts all other federal remedies for age discrimination. *See Purtill v. Harris*, 658 F.2d 134, 137 (3d Cir. 1981). Plaintiff also agrees that "a 'pure or generic retaliation claim' does not implicate the Equal Protection Clause." ECF No. 64, at 16. *See Goldhaber v. Higgins*, 2009 WL 565725, at *12 (W.D. Pa. 2009) (citing *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997)). Therefore, to the extent that Plaintiff's Complaint alleges Equal Protection claims on the basis of age discrimination or retaliation, *see* ECF No. 11, at 17–18, summary judgment for the Defendants is granted as to those portions of this Count alleging Equal Protection violations. Plaintiff's Equal Protection claims based on race or national origin discrimination, however, remain for consideration.

Defendants argue that the applicable two-year statute of limitations for § 1983 actions arising in Pennsylvania, see *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009), bars Plaintiff from

---

[13] Plaintiff brings Count V, a § 1983 claim for denial of equal protection, solely against Dean Camp in his individual capacity. ECF No. 11, at ¶¶ 139–44.

alleging Equal Protection violations for anything that occurred before July 27, 2009, two years before the date this lawsuit was filed.[14]

Our Court of Appeals has set forth the law governing the statute of limitations in § 1983 cases:

> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524(2); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir. 1993). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998). . . . The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. *See United States v. Kubrick*, 444 U.S. 111, 120 (1979).

*Kach*, 589 F.3d at 634–35.

One exception to the statute of limitations is the doctrine of continuing violations. "The Continuing Violations Doctrine . . . is an 'equitable exception to the timely filing requirement,' which applies 'when a defendant's conduct is part of a continuing practice' and is 'more than the occurrence of isolated or sporadic acts.'" *Ozoroski v. Maue*, 460 F. App'x 94, 97 (3d Cir. 2011) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). This Court has previously explained that under Third Circuit precedent, if the allegedly violative acts that occurred before the limitations period were "discrete," then they are time-barred. *Rankin v. Smithburger*, No. 12-1373, 2013 WL 3550894, at *5 (W.D. Pa. July 11, 2013). The key distinction is therefore the difference between discrete and non-discrete acts:

---

[14] The Defendants' argument on this point is rather truncated: a one sentence paragraph stating basically that point without support. ECF No. 55, at 10. Perhaps the brevity of the argument explains why Plaintiff neglected to respond to it in his brief in opposition. In any case, the Court must address the issue regardless of the Defendants' failure to expand on the basic argument and Plaintiff's failure to respond to it at all.

The difference between a discrete act and a non-discrete act, according to [*O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)] and [*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)], is that discrete acts are "easy to identify." The Supreme Court held in *Morgan* that non-discrete acts necessarily "occur[] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115. The term "non-discrete acts" has been interpreted by at least one district court in this Circuit to mean activity taking place "behind the scenes," such as internal memoranda, e-mails, or letters suggesting a pattern of unlawful conduct. *See Hayes v. Del. State Univ.*, 726 F. Supp. 2d 441, 455 (D. Del. 2010).

*Hankin Family P'ship v. Upper Merion Twp.*, No. 01-1622, 2012 WL 43599, at *11 (E.D. Pa. Jan. 6, 2012). Put differently, "the continuing violations doctrine is not a substitute for a plaintiff's awareness of and duty to assert his/her rights in a timely fashion," *Bennett v. Susquehanna Cnty. Children & Youth Servs.*, No. 13-3823, 2014 WL 5351736, at *4 (3d Cir. Oct. 22, 2014), and therefore "the doctrine 'does not apply when plaintiffs are aware of the injury at the time it occurred,'" *id.* (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir.2003)).

Dr. Nahouraii can hardly claim that he was unaware of the alleged violations that occurred before July 27, 2009. To the contrary, the record reveals Dr. Nahouraii to be a highly-focused person who exhibits a hyper-awareness of alleged violations of his rights, especially at the hand of Dr. Camp. Here's one example. On September 20, 2007, while still out on the one-year leave mandated by the 2006 Settlement Agreement, Dr. Nahouraii received news that his schedule had been changed. ECF No. 49, at 32. Four (4) days later, on September 24, 2007, he filed a grievance with President Atwater, saying that "Dr. Camp deliberately assigned to me a punitive schedule by denying me the opportunity to teach a graduate course and by building into my schedule 5 hours of free time between my classes." *Id.* at 32–33. Thereafter, Dr. Camp emailed Dr. Nahouraii and explained that his (Nahouraii's) schedule was being adjusted as part of a departmental reorganization that was to take place that spring semester and

was not intended to be punitive. ECF No. 49, at 32. Dr. Camp's email stated that the reorganization would be finalized in two to three weeks at which time Dr. Nahouraii would become aware of his spring schedule. Dr. Nahouraii responded that Dr. Camp's email "require[d] willful suspension of disbelief," and that "I must be free of your willful and relentless discrimination and retaliation against me." ECF No. 49, at 31. Thus, from the very beginning, Dr. Nahouraii was aware of what he perceived to be discriminatory actions by Dr. Camp. Because the doctrine of continuing violations does not apply in cases where a plaintiff was aware of claimed violations at the time they occurred, Dr. Nahouraii cannot rely on this exception to the statute of limitations' requirement that he assert his rights in a timely fashion.

Defendants' Motion for Partial Summary Judgment on what remains of this claim is granted to the extent that Plaintiff is barred from alleging Equal Protection violations for or as to anything anything that occurred before July 27, 2009.

### 3.     Title VII Statute of Limitations

Title VII of the Civil Rights Act of 1964 requires plaintiffs, before beginning a federal lawsuit, "to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC)." *Lewis v. City of Chi., Ill.*, 560 U.S. 205 (2010) (citing 42 U.S.C. § 2000e–5(e)(1)). "In a deferral state such as Pennsylvania, the time-frame for such a filing is '300 days after the alleged unlawful employment practice occurs.'" *Baker v. Office Depot, Inc.*, 115 F. App'x 574, 576 (3d Cir. 2004) (footnote omitted) (quoting *Bailey v. United Airlines*, 279 F.3d 194, 197 (3d Cir. 2002)). A plaintiff's attempt to obtain relief under federal law from a defendant's alleged employment discrimination under Title VII "may proceed only if he filed his administrative charge of discrimination within 300 days of the unlawful employment actions he challenges." *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). If the challenged

22

discrimination occurred before that time period, it will be consider untimely. Similarly, the statute of limitations for actions arising under the PHRA is 180 days. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 P.S. §§ 959(a), 962).

Defendants point out that Plaintiff did not file his first EEOC charge until September 29, 2008. ECF No. 57-1, at 65. The charge was faxed to the EEOC and PHRA on September 30, 2008 and it was time-stamped October 1, 2008. *Id.* Plaintiff appears to agree with Defendants about the applicable time periods in play here:

> Pursuant to the applicable 300 day statute of limitations for Title VII actions, (*see* 42 U.S.C. § 2000e–5(f)(1)), any discrete acts set forth in that charge that occurred *after* December 6, 2007 are considered timely. Pursuant to the applicable 180 day statute of limitations for PHRA actions, (*see* 43 P.S. § 959(h)), any discrete acts set forth in that charge that occurred *after* April 3, 2008 likewise are considered timely.

ECF No. 64, at 2. The Court agrees with the parties that any actions that occurred before those two relevant dates, December 6, 2007 and April 3, 2008, are untimely.[15]

### 4. Defendants' Failure to Exhaust Argument / Plaintiff's Motion to Amend Complaint

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir. 1997). This is true in the Title VII context: "[t]he Supreme Court has explained that when Title VII remedies are available, they must be exhausted before a plaintiff may file suit." *Spence v. Straw,* 54 F.3d 196, 200 (3d Cir. 1995). The exhaustion requirement may not be applicable, however, where a plaintiff has already filed an EEOC charge and the subsequent acts are within the scope of the earlier complaint:

---

[15] Dr. Nahouraii filed a second EEOC charge on December 14, 2010. The Defendants also argue that actions that occurred before the applicable 180/300 day statute of limitations measured from the filing date of that Charge should also be barred. The Court does not agree. Much for the same reasons discussed in the following section on exhaustion requirements, the Court concludes that Dr. Nahouraii likely was not even required to file the second EEOC charge. Additional acts of retaliation or discrimination that occurred after the filing of the first charge and during the pendency of the case "are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint." *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. 1984) (per curiam).

> Where discriminatory actions continue after the filing of an EEOC complaint . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period. This court has recognized this fact in permitting suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints and wait another 180 days to sue. The rationale behind these decisions is that once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed. This slim likelihood of successful conciliation does not justify forcing the victim to wait an additional 180 days to file suit. The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.

*Waiters*, 729 F.2d at 237 (internal citations and footnote omitted).

The Third Circuit has explained that, in determining whether exhaustion was required, courts are to "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Robinson*, 107 F.3d at 1024. Moreover, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Id.* at 1025–26 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 198–99 (3d Cir. 1976)).

Dr. Nahouraii's EEOC charge filed on September 29, 2008, contained allegations that the Defendants discriminated against him by denying him the opportunity to teach classes in India, eliminating him as a potential selection for department chairperson, denying him the opportunity to teach EMBA courses, denying him a research release, requiring him to teach inappropriate undergraduate classes, requiring him to teach too many classes, denying him the opportunity to develop an on-line graduate course, and so on—in other words, the same basic things he has been alleging again and again up to the present time. ECF No. 57-1, at 65.

24

After hearing oral argument on the cross-motions for summary judgment, the Court entered an Order, on September 30, 2014, directing that "Plaintiff may file any Motion requesting leave to Amend its Complaint on or before 10/22/2014, as to any recovery sought by Plaintiff for events that occurred after the First Amended Complaint [ECF No. 11] was filed, and its reasoning and supporting authority for why the Amendment should be permitted. The Defendant shall then have twenty-one (21) days after any such filing to file a response to Plaintiffs Motion."[16] The reason for that Order was that, in their Motion for Partial Summary Judgment, Defendants had argued that certain allegations involved events that occurred after the filing of EEOC charges and were therefore not administratively exhausted. For example, Defendants' brief states the following: "In ¶¶87-96 of D-1 Plaintiff alleges that he was not permitted to teach in the India PES Summer program in summer 2011. This occurred allegedly after the last Charge was filed and was not administratively exhausted." ECF No. 55, at 8.

The Second Amended Complaint ("SAC") alleges continuing violations of the same sort (primarily, denial of the opportunity to teach EMBA and India courses), ECF No. 70-1, at ¶¶ 101–22, and the Court concludes that the acts alleged in the SAC "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom," *Waiters*, 729 F.2d at 237, and that, as "new acts which occurred during the pendency of proceedings" they are the kinds of things that can "reasonably be expected to grow out of the charge of discrimination," *Ostapowicz*, 541 F.2d at 198–99. Accordingly, Dr. Nahouraii's Motion for leave to file a Second

---

[16] "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Our Court of Appeals has historically directed the district courts to permit similar amendments, even close to trial, when doing so is consistent with Rule 15. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 519 (3d Cir. 1988).

Amended Complaint is granted, and Defendants' Motion for Partial Summary Judgment on exhaustion grounds is denied.

## IV.   CONCLUSION

Because the Court concludes that it does not have jurisdiction over the breach of contract claim, and, alternatively that if it did, Dr. Nahouraii has no such claim in any event given the very language of the 2006 settlement agreement and his failure to fulfill his obligations under it, Dr. Nahouraii's Motion for Partial Summary Judgment as to it is denied, and that of the Defendants is granted. This claim is dismissed without prejudice.

Because Plaintiff has established that there is a disputed issue of material fact as to whether the Defendants' denying Dr. Nahouraii the opportunity to teach EMBA classes in all but one semester constitutes an adverse action for Title VII purposes, Defendants' Motion for Partial Summary Judgment on this ground is denied

To the extent that Plaintiff's Complaint alleged Equal Protection claims on the basis of age discrimination or retaliation, summary judgment is granted as to those portions of the Count alleging Equal Protection violations. Furthermore, Plaintiff is barred from alleging any Equal Protection violations for anything that occurred before July 27, 2009. Any claims based on acts that occurred before December 6, 2007 are untimely for Title VII purposes. Any claims based on acts that occurred before April 3, 2008 are untimely for PHRA purposes.

Finally, Defendants' Motion for Partial Summary Judgment on exhaustion grounds as to matters now stated in the Second Amended Complaint is denied, and Plaintiff's Motion for leave to file a Second Amended Complaint is granted to the extent that Plaintiff may make and litigate his allegations as to conduct post-dating the First Amended Complaint that are alleged continuations of the acts alleged in that First Amended Complaint and that survive for trial.

26

An appropriate Order will be entered.

Mark R. Hornak
United States District Judge

Dated: January 28, 2015

cc:     All counsel of record